## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                  Case No.: 3:19-cr-188-MMH-JBT

JOHN DOE
     a/k/a Freddie Lee Davis, Jr.
     a/k/a Frederick Davis
     a/k/a Dave Davis
     a/k/a Patrick Constantine Melbourne
     a/k/a Patrick Melburn
     a/k/a Joseph Gordon
     a/k/a Ricardo Noel Jones
     a/k/a Frank Victor Douglas
     a/k/a Danny Keith Brooks
_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress and

Memorandum of Law (Doc. 50; Motion), filed on July 31, 2020.   On August 14,

2020, the United States responded to the Motion.   See United States' Response

in Opposition to Defendant's Motion to Suppress (Doc. 52; Response to Motion).

The undersigned referred the Motion to the Honorable Joel B. Toomey, United

States Magistrate Judge, for preparation of a report and recommendation on

the matter, and the Magistrate Judge entered a Report and Recommendation

(Doc. 62; Report) on September 30, 2020.   Defendant filed objections to the

Report on October 14, 2020.   See Defendant's Objections to Magistrate Judge's

Report and Recommendation (Doc. 63; Objections).   On October 28, 2020, the United States responded to Defendant's Objections.   See United States' Response to Defendant's Objections to Report and Recommendation on Defendant's Motion to Suppress (Doc. 67; Response to Objections).

The Court reviews a magistrate judge's report and recommendation in accordance with the requirements of Rule 59, Federal Rules of Criminal Procedure (Rule(s)) and 28 U.S.C. § 636(b)(1).   The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   28 U.S.C. § 636(b)(1); see also Rule 59(b)(3).   "[I]n determining whether to accept, reject, or modify the magistrate's report and recommendations, the district court has the duty to conduct a careful and complete review."   Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982) (quoting Nettles v. Wainwright, 677 F.2d 404, 408 (5th Cir. Unit B 1982)[1]). Additionally, pursuant to Rule 59 and § 636(b)(1), where a party timely objects

---

[1]      In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit (including Unit A panel discussions of that circuit) handed down prior to October 1, 1981.   W.R. Huff Asset Mgmt. Co., L.L.C. v. Kohlberg, Kravis, Roberts & Co., L.P., 566 F.3d 979, 985 n.6 (11th Cir. 2009).   After October 1, 1981, "only decisions of the continuing Fifth Circuit's Administrative Unit B are binding on this circuit...." Dresdner Bank AG v. M/V Olympia Voyager, 446 F.3d 1377, 1381 n. 1 (11th Cir. 2006). The Court notes that the Fifth Circuit overruled Nettles, in part, on other grounds, in Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).   However, "that does not change the binding effect of Nettles in this Circuit because Douglass was decided after October 1, 1981 and was not a Unit B decision." United States v. Schultz, 565 F.3d 1353, 1360 n.4 (11th Cir. 2009).

to the magistrate judge's report and recommendation, "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Rule 59(b)(3); Thomas v. Arn, 474 U.S. 140, 149–50 (1985).   Nevertheless, while de novo review of a magistrate judge's recommendation is required only where an objection is made, the Court always retains the authority to review such a recommendation in the exercise of its discretion.   See Rule 59 advisory committee notes (2005) (citing Thomas, 474 U.S. at 154; Mathews v. Weber, 423 U.S. 261, 270–71 (1976)).

In the Report, the Magistrate Judge recommends that this Court deny the Motion in its entirety, see Report at 2.   He provides two alternate bases for this recommendation.   See generally id.

First, the Magistrate Judge concludes that Defendant's statements at each of three interviews conducted by deportation officers were not confessional in nature, but rather constituted "new crimes," such that there was no Fifth Amendment concern.[2]   In making this recommendation, the Magistrate Judge

---

[2]   Because neither party objects to the recitation of the facts in the Report, and because the Court determines that the factual recitation is due to be adopted and accepted as part of the Court's opinion, the Court does not repeat the facts here.   The Court notes only that in Count One Defendant is charged with hindering his deportation based on statements made by Defendant to deportation officers on April 17, 2019, in Count Two Defendant is charged with hindering his deportation based on statements Defendant made to deportation officers on June 20, 2019, and in Count Three Defendant is charged with hindering his deportation based on statements Defendant made to deportation officers on July 23, 2019.   See generally Indictment

relies on the reasoning of several cases,[3] in which courts found that the respective defendant's un-<u>Mirandized</u>[4] statements did not implicate the Fifth Amendment because they constituted new crimes and were not confessional in nature, <u>see</u> Report at 6–8; <u>see also</u> <u>Kirk</u>, 528 F.2d at 1062; <u>Owuor</u>, 397 F. App'x at 575; <u>Doe</u>, 2012 WL 5364269, at *8.

Alternatively, the Magistrate Judge recommends that, while the interviews likely constituted "custodial interrogations," it is immaterial that the officers did not give Defendant any <u>Miranda</u> warnings because the questions asked of Defendant were subject to the "routine booking question" exception to <u>Miranda</u>.  <u>See</u> Report at 14.   In reaching this conclusion the Magistrate Judge found that the questions the officers asked were purely routine and biographical in nature, and not intended to induce an incriminating response, such that they merely constituted "straightforward attempts to obtain Defendant's biographical information in order to complete his deportation."  <u>Id.</u> at 14–17. In doing so, the Magistrate Judge credited the unrebutted testimony of Officer Keaton as to the deportation officers' subjective intent and purpose in asking

_____

(Doc. 1).

[3]     Specifically, the Magistrate Judge cites <u>United States v. Kirk</u>, 528 F.2d 1057, 1061–62 (5th Cir. 1976), <u>United States v. Owuor</u>, 397 F. App'x 572 (11th Cir. 2010), and <u>United States v. Doe</u>, No. CRIM. 12-0052, 2012 WL 5364269, at *8 (W.D. La. Oct. 1, 2012).

[4]     In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1996), the Supreme Court held that the Fifth Amendment right against self-incrimination requires that law enforcement advise a person subject to custodial interrogation of the right to remain silent and the right to be represented by an attorney before and during any questioning.

the biographical questions of Defendant.   On this basis, the Magistrate Judge recommends that the officers did not intend to use the biographical questions at issue as a guise for obtaining incriminating information, nor did they seek incriminating information, and thus the exception applies.   Id.   For this additional reason, the Magistrate Judge recommends denying Defendant's Motion.

As noted, Defendant filed objections to the Report.   See generally Objections.   In the Objections, Defendant does not object to any of the factual findings of the Magistrate Judge.   See generally id.   However, he does object to the Magistrate Judge's legal conclusions.   See generally id.   Specifically, Defendant challenges the Magistrate Judge's recommendation that Defendant's alleged incriminating statements constituted new crimes and did not relate to past crimes, and likewise objects to the Magistrate Judge's recommendation that the "routine booking question" exception applies to render Defendant's un-Mirandized statements admissible.   See id. at 2.

Defendant maintains that, based on his interpretation of the caselaw applying the "new crime" rationale, if a statement is both a new crime and an admission of a past crime, the Fifth Amendment is implicated by the admission of evidence of the past crime and thus the statement should be suppressed even though it also constitutes a new crime in and of itself.   See id. at 4.   In this regard, Defendant takes issue with the fact that the Report does not explain

how Defendant's subsequent statements, even if new crimes, are not also incriminating statements with regard to his alleged past crimes. <u>Id.</u> at 7. Because Defendant was not <u>Mirandized</u>, he asserts, his statements to the deportation officers on the dates in question should be suppressed. <u>Id.</u> at 4–8.

Defendant also objects to the Magistrate Judge's recommendation that even if incriminating and given during custodial interrogation, Defendant's statements are nonetheless admissible under the "routine booking question" exception. <u>Id.</u> at 8. In particular, Defendant asserts that unlike the routine nature of biographical questions typically asked during the booking process, "the interaction between ICE officers and Defendant was confrontational and designed to elicit information the ICE officers knew would be incriminating." <u>Id.</u> at 8. In support, Defendant argues that the interviewing officers knew that Defendant had provided conflicting information in the past, and "threatened Defendant with criminal prosecution if Defendant did not answer their questions." <u>Id.</u> Moreover, Defendant notes that "ICE Officers have full law enforcement authority to proceed with removal in an administrative setting or to bring criminal charges if a person hampers their deportation or provides a false statement to them," and maintains that the instant facts are not the routine booking interaction contemplated by the exception crafted by courts. <u>Id.</u> at 9.

The United States generally maintains that Defendant's objections are without merit.  See generally Response to Objections.  In addition to other reasons that need not be addressed here, the United States argues that Defendant's statements were neither confessional in nature nor incriminatory.[5] See id. at 4–6.  Further, the United States seeks to minimize the importance of Defendant's un-Mirandized biographical statements to the charged crimes, maintaining that the "primary basis" of the charges, at least as to Counts Two and Three, is the Defendant's "refusal to make any statements when he was asked for biographical information."  Id. at 6.  Echoing the Magistrate Judge's conclusion in the Report, the United States contends that the interviewing officers did not "know that any statement the Defendant made would incriminate him."  Id. at 10.

On January 6, 2021, the Court held a hearing on the matter.  See Clerk's Minutes (Doc. 67; January 6 Hearing).  During that hearing, the Court discussed with the parties the applicable law related to the distinction between

---

[5] The United States contends that acceptance of Defendant's arguments would lead to an "absurd result."  See Response to Objections at 1–3.  Specifically, the Government maintains that "after immigration officers question an alien to obtain identifying and other biographical information, they can never question him again if they suspect that he lied during the initial interview unless they advise him of his Miranda rights and provide him with a lawyer, if he requests one."  Id. at 1.  While the Court finds that the specific questions asked of Defendant in this case did not require the provision of Miranda warnings, the Court declines to accept the Government's broad contention that any requirement of giving Miranda warnings and providing counsel to an individual subject to a custodial interrogation in deportation custody could be described as absurd.

an incriminating statement—which generally implicates the Fifth Amendment's prohibition against self-incrimination, and a new crime—which may not.  See generally id.  In doing so, the Court expressed the concern that the relevant authority cited in the Report may not fully address the unique facts presented in this case.  Id.  In this regard, the Court observed that Defendant's statements on April 17th, 2019, likely would not be subject to suppression as evidence of a prior crime. [6]  Id.  However, Defendant's statements on June 20th and July 23rd present a different question than that posed in relevant caselaw.  Specifically, as the Court explained, in the cited cases the government charged each defendant only with his last-in-time instance of making a criminal statement.  Id.  In other words, in none of the cited cases was the defendant charged in such a way that his subsequent–new crime–statements also could be inculpatory as to a previously committed crime also charged against him.  As the Court discussed during the hearing, here Defendant is charged with three separate instances of hindering his deportation, and his later statements in the June 20th and July 23rd interviews could be inculpatory as to the charge in Count One of hindering his deportation

---

[6]     As the Court explained, this appears to be the case because the Fifth Amendment's prohibition against self-incrimination relates to crimes alleged to have been committed prior to the time when the inculpatory testimony was sought.  See January 6 Hearing.  Here Defendant's April 17th statements are alleged to be part and parcel of the crime of hindering his deportation—which is the crime charged in Count One of the Indictment, not evidence of an earlier crime.

on April 17th.   In the same way, his July 23rd statements could be inculpatory as to the charges in Counts One and Two that he hindered his deportation on April 17th and June 20th.[7]   <u>Id.</u>   With these concerns in mind, the Court directed the parties to confer and file a notice advising the Court whether the parties wish to agree to a severance of each of the three counts charged in the Indictment.   <u>Id.</u>   Additionally, the Court directed the parties, in the event they could not agree on severance, to file supplemental briefs on the "administrative concerns" authority that the Government addressed during the hearing.   <u>Id.</u>

On January 20, 2021, the parties timely filed the Joint Notice Regarding Issues Raised at Hearing Held on January 6, 2021 (Doc. 77; Notice), in which they advised the Court that neither party wanted a severance of the charges.[8] <u>See</u> <u>id.</u>   Thus, the parties proceeded to file supplemental memoranda as directed by the Court.   <u>See</u> United States' Supplemental Memorandum Regarding Defendant's Motion to Suppress (Doc. 78; Supplemental Memo), filed on February 3, 2021; <u>see also</u> Defendant's Response to United States' Supplemental Memorandum Regarding Defendant's Motion to Suppress (Doc.

---

[7]    This is precisely the problematic scenario identified by the district court in <u>U.S. v. Owuor</u>.   <u>See</u> No. 2:08-CR-149-WKW[WO], 2009 WL 1439361, at *7, n.11 (M.D. Ala. May 20, 2009) (observing in dicta that "[i]f the Government were to use the statements from the interview room to <u>prove</u> that [defendant] made a prior false statement in the booking room, the Government's argument would be on much less sure footing").

[8]    In the Notice, the Defendant also advised the Court that he does not seek redaction of the affirmative statements he made at the June 20th and July 23rd interviews; but rather seeks suppression of both interviews in their entirety.   <u>See</u> Notice at 2.

79; Supplemental Response), filed on February 18, 2021.

In the Supplemental Memo, the Government generally argues that the "routine booking question exception" applies to the questions asked of Defendant at each of the three interviews at issue.   See generally Supplemental Memo.   Specifically, the Government contends that the administrative immigration concerns motivating the interviewing officers in this case render the exception applicable to their questions of Defendant on those dates, such that their questions were removed from the ambit of <u>Miranda</u>. <u>Id.</u> (citing <u>Bruce v. United States</u>, 439 F. Supp. 2d 364, 371–72 (M.D. Pa. 2006); and <u>United States v. Etenyi</u>, No. 15-10102-JTM, 2016 WL 633874 (D. Kan. Feb. 17, 2016)).

In Defendant's Supplemental Response, Defendant reiterates that he does not desire a severance, "regardless of the Court's ruling on the Motion to Suppress."   <u>See</u> Supplemental Response at 2.   Instead, Defendant maintains that his un-<u>Mirandized</u> statements should be suppressed "in their entirety from each and every count charged in the indictment, as a whole."   <u>Id.</u> at 2–3.

With regard to the "administrative concerns" cases cited by the Government, Defendant seeks to distinguish <u>Bruce</u> and <u>Etenyi</u> from the instant case.   <u>See generally id.</u>   As Defendant notes, <u>Bruce</u> involved a defendant who, when questioned on separate occasions over a period of time, did not make statements that conflicted with any of his prior statements.   <u>See</u> 439 F. Supp.

2d at 365–67.   Defendant additionally highlights the materially different facts of Bruce, and contends that here ICE agents "continually questioned Defendant after there was no longer a reasonable expectation of obtaining information that would aid in his administrative deportation."   See Supplemental Response at 6.   Thus, Defendant maintains his interactions with the ICE agents after March 14, 2019, took on a prosecutorial nature rather than an administrative one.   Id.

Defendant also seeks to distinguish Etenyi on the grounds that unlike the defendant in that case, here Defendant gave conflicting information during his interviews and given the confrontational nature of the interviews they could not reasonably have led to information that would aid the ICE officers in effectuating Defendant's administrative removal.   See id. at 7–8.

Upon review of the briefing, the Report, the record in this case, and the relevant authority, the Court determines that Defendant's Motion is due to be denied because the Magistrate Judge correctly concludes that the inquiries by the deportation officers in this case all fall into the "routine booking question" exception to Miranda's exclusionary rule.   Specifically, this exception applies to the biographical questions asked of the Defendant during the April 17, 2019, June 20, 2019, and July 23, 2019 interviews, and thus, Defendant's answers to those questions—even if incriminating—are not subject to suppression under

Miranda.   In adopting the Magistrate Judge's recommendation to this effect, the Court writes only to address Defendant's argument as to this specific issue.[9]

In determining the applicability of the routine booking question exception, the Court begins with the Supreme Court's decision in Rhode Island v. Innis, 446 U.S. 291 (1980), addressing the circumstances in which a person in custody is subject to "interrogation" such that the right to Miranda warnings is triggered.   The Innis Court determined that Miranda warnings are required when a suspect is subjected to either express questioning or its functional equivalent, such that "the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."[10]   446 U.S. at 301.   The Court went on to explain that

> the latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police . . . . [a] practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.   But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions,

---

[9]     While the Court continues to harbor the concerns expressed during the January 6 Hearing regarding the question of whether the introduction of evidence of Defendant's statements in the second and third interviews may implicate his Fifth Amendment right against self-incrimination, the Court need not resolve this question because his statements are subject to the "routine booking question" exception to the need for Miranda warnings recognized by the Eleventh Circuit.

[10]     The Supreme Court defined "incriminating response" to mean "any response— whether inculpatory or exculpatory—that the prosecution may seek to introduce at trial."   Innis, 446 U.S. at 301 n.5 (emphasis in original).

> the definition of interrogation can extend only to words or actions on the part of police officers that they <u>should have known</u> were reasonably likely to elicit an incriminating response.

<u>Id.</u> at 301–02 (emphasis in original).

Turning to the discrete "routine booking question" exception, the Eleventh Circuit appears to have first addressed the exception in detail in the case of <u>United States v. Glen-Archila</u>, 677 F.2d 809, 816 (11th Cir. 1982).[11]   In that case, after stopping a British ship, Coast Guard personnel detected the strong smell of marijuana and arrested the defendant, a crew member aboard the ship, amongst others.   <u>Id.</u> at 812–13.   While law enforcement processed the crewmembers, an immigration officer interviewed the defendant without reading him his <u>Miranda</u> rights.   <u>Id.</u> at 813, 815.   During the interview, the defendant stated that his home address was in Colombia.   <u>Id.</u>   At trial, the government used this statement regarding his address as evidence of the defendant's involvement in a conspiracy to import the marijuana found aboard the ship.   <u>Id.</u> at 815.   The defendant sought to suppress the statement because he did not receive <u>Miranda</u> warnings prior to being interviewed, but the government argued that such a routine biographical question—seeking the defendant's home address—did not require <u>Miranda</u> warnings.   <u>Id.</u>   In

---

[11]   The Court notes that the former Fifth Circuit Court of Appeals previously applied the exception—without significant discussion of its contours—in cases such as <u>United States v. Menichino</u>, 497 F.2d 935, 940 (5th Cir. 1974), and <u>United States v. Henry</u>, 604 F.2d 908, 915 (5th Cir. 1979) (abrogated on other grounds).

determining whether the absence of <u>Miranda</u> warnings warranted suppression of the defendant's statement, the court discussed precedent from the former Fifth Circuit and other circuits which found <u>Miranda</u> warnings unnecessary for routine biographical questions.   <u>Id.</u> at 815–16.   In the court's discussion of those cases, the intent or purpose of the questioning officer played a central role in determining whether the right to <u>Miranda</u> warnings was implicated.   <u>See</u> <u>id.</u> For example, in discussing <u>Menichino</u>, the court first noted that the "former Fifth Circuit has indicated that such warnings are indeed not necessary for such routine interrogation, even if custodial, <u>if not intended</u> to produce incriminating responses."   <u>Id.</u> at 815 (emphasis added) (citing <u>Menichino</u>, 497 F.2d 935). The court went on to quote the following passage from the Fifth Circuit's decision: "[t]he interrogation appears to have been a straight forward attempt to secure biographical data necessary to complete booking, and the questions asked did not relate, even tangentially, to criminal activity."   <u>Id.</u> (quoting <u>Menichino</u>, 497 F.2d at 941).

The court then turned to the <u>Henry</u> decision and noted that the Fifth Circuit "came to a similar conclusion" there, ruling that immigration officials need not give <u>Miranda</u> warnings "unless an interrogation becomes custodial and information <u>is sought for</u> use against the person in a criminal proceeding."   <u>Id.</u> at 815–16 (emphasis added) (citing <u>Henry</u>, 604 F.2d at 915).   The <u>Glen-Archila</u> court next observed that application of the routine booking exception to the

requirement of <u>Miranda</u> warnings had not been restricted to the former Fifth Circuit.   The court observed,

> The Second Circuit, in the precise context at issue here, has, for reasons similar to those presented in <u>Menichino</u>, directly held that routine biographical questions may be asked so long as they are part of a routine procedure and so long as the questions <u>are not intended to induce</u> incriminating responses. Responses to those questions, if they should later prove to be incriminating, may, the court concluded, be used at trial. . . . We conclude likewise.

<u>Id.</u> at 816 (emphasis added) (internal citations omitted) (citing <u>Hines v. LaVallee</u>, 521 F.2d 1109, 1112–13 (2nd Cir. 1975)).   Agreeing with the cited authority, the Eleventh Circuit in <u>Glen-Archila</u> held that "[t]he question in response to which [defendant] gave his address was, we believe, routine, biographical, and <u>not intended to induce an incriminating response</u>. A <u>Miranda</u> warning was not necessary."   <u>Id.</u> (emphasis added).   Nevertheless, the Eleventh Circuit cautioned that

> police may not use routine biographical questioning as a guise for obtaining incriminating information.   If investigative questions are asked while routine information is being obtained . . . answers to such questions are inadmissible if the suspect has not been read his <u>Miranda</u> rights.   Even questions that usually are routine must be pr[e]ceeded by <u>Miranda</u> warnings if they are intended to produce answers that are incriminating.

<u>Id.</u> at 816 n.18 (citing <u>Henry</u>, 604 F.2d 908).

In 1990 the Supreme Court in the case of <u>Pennsylvania v. Muniz</u>, 496 U.S. 582 (1990) approved the application of the routine booking question exception. <u>See id.</u> at 601–02 (stating "[w]e agree with <u>amicus</u> United States, however, that

Muniz's answers to these first seven questions are nonetheless admissible because the questions fall within a 'routine booking question' exception which exempts from Miranda's coverage questions to secure the 'biographical data necessary to complete booking or pretrial services'") (citation omitted).   In doing so the Court explained that "recognizing a booking exception to Miranda does not mean, of course, that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's Miranda rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions."   Id. at 602 n.14 (emphasis added) (internal quotations and edits omitted).

Although the Muniz Court's discussion of the exception was brief, the decision is nevertheless instructive in two significant respects.   First, the Court rejected the government's contention that the "first seven questions" did not qualify as "interrogation" because the questions were not intended to elicit information for investigatory purposes.   Id. at 600–01.   In doing so, the Court relied on Rhode Island v. Innis, 446 U.S. 291 (1980) and its holding that whether an interaction constitutes an interrogation for purposes of Miranda is viewed from the perspective of the subject, rather than looking to the intent of the inquiring officer.   Muniz, 496 U.S. at 600–01 (citing Innis, 446 U.S. 291).   For this reason, in determining whether an interaction is an "interrogation," what matters is whether the officer should have known that the circumstances of the

interaction were reasonably likely to elicit an incriminating response.   <u>Innis</u>, 446 U.S. at 301–02.   Second, despite concluding that the "first seven questions" were part of a custodial "interrogation," triggering the defendant's right to <u>Miranda</u> warnings, the Court nevertheless found the questions to be "exempt from <u>Miranda</u>'s coverage" because they were asked "for record-keeping purposes only," and "therefore appear[ed] reasonably related to the police's administrative concerns."   <u>Muniz</u>, 496 U.S. at 601–02.   If on the other hand the questions had been "designed to elicit incriminatory admissions" then the routine booking exception would not apply.   <u>Id.</u> at 602 n.14.   Thus, while <u>Muniz</u> confirms that the specific subjective intent or purpose of the inquiring officer is not determinative of whether an interaction is an interrogation triggering the right to <u>Miranda</u> warnings, it does appear to be an important factor in determining whether answers to questions seeking routine biographical information in the absence of such warnings are subject to suppression.

The Court recognizes that the First, Sixth, and Ninth Circuits appear to apply a more objective "should have known" standard when determining whether the routine booking question exception applies, i.e., these jurisdictions consider whether the biographical questions asked were reasonably likely to elicit an incriminating response, rather than looking to the intent of the inquiring officer.   See <u>United States v. Reyes</u>, 225 F.3d 71, 76–77 (1st Cir.

2000) ("Although phrased in terms of the officer's intention, the inquiry into whether the booking exception is thus inapplicable is actually an objective one: whether the questions and circumstances were such that the officer should reasonably have expected the question to elicit an incriminating response."); United States v. Avery, 717 F.2d 1020, 1025 (6th Cir. 1983) (observing that "[e]ven a relatively innocuous series of questions may . . . be reasonably likely to elicit an incriminating response."); United States v. Mata-Abundiz, 717 F.2d 1277, 1280 (9th Cir. 1983) ("The [routine booking question exception] is objective. The subjective intent of the agent is relevant but not conclusive.").[12] As discussed in Alford v. State, however, this approach appears to conflate the

---

[12]    A few district courts in the Eleventh Circuit also have applied an objective approach considering whether the officer "should reasonably have expected" that his or her questions would elicit an incriminating response when determining whether the exception was applicable.    See United States v. Orozco Ramirez, No. 117CR185LMMAJB01, 2019 WL 2165920, at *6 (N.D. Ga. Apr. 22, 2019) ("[A]lthough the routine-booking exception is phrased in terms of the officer's intention, the inquiry into whether [it] is thus inapplicable is actually an objective one: whether the questions and circumstances were such that the officer should reasonably have expected the question to elicit an incriminating response.") (internal quotations omitted, alteration in original) (citing United States v. Bunch, No. 1:11-CR-136JEC/AJB, 2012 WL 11799873, at *22 (N.D. Ga. Dec. 20, 2012) (quoting Reyes, 225 F.3d at 76–77)), report and recommendation adopted sub nom. United States v. Ramirez, No. 117CR00185LMMAJB, 2018 WL 8337421 (N.D. Ga. May 17, 2018); see also United States v. Vega-Gutierrez, No. 1:15-CR-178-RWS-LTW, 2018 WL 7918059, at *7 (N.D. Ga. Nov. 5, 2018) ("Questions that are reasonably likely to elicit an incriminating response may breach the booking exception."), report and recommendation adopted, No. 115CR178RWSLTW2, 2019 WL 446227 (N.D. Ga. Feb. 5, 2019); United States v. Corey, 861 F. Supp. 2d 1341, 1344 (S.D. Fla. 2012) ("[Q]uestions that are reasonably likely to elicit an incriminating response, even if in a series of otherwise unoffending questions, may breach the booking response.").   For the reasons explained here, the Court does not find these decisions to be persuasive.

standard for "interrogation" under <u>Innis</u> with the routine booking question exception as discussed in <u>Muniz</u>.   <u>See</u> 358 S.W.3d 647, 658 (Tex. Crim. App. 2012) (noting that decisions from some jurisdictions appear to be "reading out any distinction between the Muniz–footnote 'design' language and the Innis test, applying the latter to all custodial inquiries regardless of their potential administrative function").   Such an approach appears to be inconsistent with the language of <u>Glen-Archila</u> and with the manner the Eleventh Circuit has applied the exception.[13]

While the Eleventh Circuit has not discussed the exception in significant detail since <u>Glen-Archila</u>, both before and after <u>Muniz</u>, the Eleventh Circuit has consistently included the subjective intent of the officer as a significant factor in determining whether the routine booking question exception applies.   <u>See</u> <u>Glen-Archila</u>, 677 F.2d at 816; <u>United States v. Sweeting</u>, 933 F.2d 962, 965 (11th Cir. 1991) (rejecting defendant's contention that the officer's questions were intended to elicit incriminating information and finding "no evidence was presented that [the officer's] reason for asking [the defendant] his address was other than to secure routine booking information"); <u>United States v. Doe</u>, 661

---

[13]   The Eleventh Circuit's formulation of the exception makes more sense than the objective "should have known" approach.   In this regard, if a question qualifies as "interrogation" under <u>Miranda</u> because an officer should have known his questions were reasonably likely to elicit an incriminating response, what purpose is served by asking that same question again to determine whether the <u>exception</u> applies to those questions?

F.3d 550, 567 (11th Cir. 2011) (emphasis omitted) (citing <u>Muniz</u>, 496 U.S. at 601; and <u>Sweeting</u>, 933 F.2d at 965; additional citation omitted) (applying the "well-established 'routine booking exception' to [the need for <u>Miranda</u> warnings] for questions posed to the defendant 'to secure the biographical data necessary to complete booking or pretrial services.'"); <u>United States v. Brotemarkle</u>, 449 F. App'x 893, 896–97 (11th Cir. 2011) (emphasis added) (citing <u>Sweeting</u>, 933 F.2d at 965) ("[A] suspect's pre-<u>Miranda</u> warning responses to an officer's request for his address was admissible when there was no evidence that the question was <u>intended</u> to elicit an incriminating response."). More recently, in <u>Everett</u>, the Eleventh Circuit explained that in <u>Muniz</u> "[t]he Supreme Court reasoned that, where such questions are 'requested for record-keeping purposes only' and therefore 'appear reasonably related to the police's administrative concerns,' the questions 'fall outside the protections of <u>Miranda</u> and the answers thereto need not be suppressed.'" <u>See</u> <u>Everett v. Sec'y, Fla. Dep't of Corr.</u>, 779 F.3d 1212, 1242 n.14 (11th Cir. 2015) (quoting <u>Muniz</u>, 496 U.S. at 601–02). Based on the authority discussed here, the undersigned finds that application of the objective test embraced by some courts is inconsistent with Eleventh Circuit precedent and with the reasoning of <u>Muniz</u>. As such, the Court declines to apply such a standard to the facts of this case.

Here, as the Magistrate Judge concluded in the Report, Officer Keaton credibly testified that he did not intend to seek incriminating responses from

the Defendant during the interviews of the Defendant.   See Report at 17.
Rather, Officer Keaton sought "only biographical information 'to provide to the
consulate so they can maybe find a family member or – to issue a travel
document.'"   Id. at 5 (quoting Transcript of Hearing on Defendant's Motion to
Suppress (Doc. 60; Hr'g Tr.) at 33).   Additionally, Officer Keaton testified that
"[t]he sole purpose [of the interviews] is to get him a travel document for his
removal from the U.S."   Id. (citing Hr'g Tr. at 33).   Further, as the Magistrate
Judge summarized, Officer Keaton testified that "had Defendant provided
sufficient truthful biographical information so that a travel document could be
issued, Defendant would have been removed from the United States and not
criminally prosecuted."   Id. (citing Hr'g Tr. at 32–33).

Upon independent review of the record in this case, the arguments of the
parties, and relevant authority, the Court agrees with the Magistrate Judge's
recommendation that "the questions asked during each of the interviews in this
case were [ ] straightforward attempts to obtain Defendant's biographical
information in order to complete his deportation," and were not "intended to
induce an incriminating response."   See Report at 15–16.   Further, the Court
agrees with the Magistrate Judge's conclusion that there is no indication in this
case "that [the deportation officers] sought any more information than
necessary to establish Doe's identity and immigration status."   See id. at 16

(alteration in original) (quoting <u>Doe</u>, 2012 WL 5364269, at *8).[14]   Notably, in <u>Everett</u>, the Eleventh Circuit interpreted the routine booking question exception to include questions regarding name, address, height, weight, eye color, date of birth, and current age.   <u>See</u> 779 F.3d at 1242 n.14 (citing <u>Muniz</u>, 496 U.S. at 601–02).   Moreover, the Court agrees with the Magistrate Judge that "there is no basis in the evidence to conclude, that the officers subjectively were using the biographical questions as a guise for obtaining incriminating information."   <u>See</u> Report at 16; <u>Glen-Archila</u>, 677 F.2d at 816 (deciding not to suppress an un-<u>Mirandized</u> statement given in response to a question that was "routine, biographical, and not intended to induce an incriminating response"). Therefore, the basic questions asked of the Defendant during the interviews at issue were "routine, biographical, and not intended to induce an incriminating response."   <u>Glen-Archila</u>, 677 F.2d at 816.   Thus, the routine booking question exception applies and <u>Miranda</u> warnings were not necessary prior to the officers' questioning of Defendant.   Accordingly, Defendant's Motion to Suppress and Memorandum of Law (Doc. 50) is due to be denied.

---

[14]     As the Magistrate Judge notes, "Officer Keaton's testimony is further supported by Officer Ordon's multiple statements during the recorded interviews that the agents were not seeking incriminating statements but only biographical information." Report at 17.   "Miranda is not implicated if the questions are 'reasonably related to the police's administrative concerns.'"   <u>See</u> <u>United States v. Sanchez</u>, 447 F. Supp. 3d 1280, 1288 (M.D. Fla. 2020) (citing <u>Muniz</u>, 496 U.S. at 601–02, and <u>Brotemarkle</u>, 449 F. App'x at 896) (recognizing that "[a] defendant's true name is related to administrative concerns . . .").

In light of the foregoing, it is

**ORDERED:**

1.    Defendant's Objections to Magistrate Judge's Report and Recommendation (Doc. 63) are **OVERRULED**.

2.    The Report and Recommendation (Doc. 62) is **ADOPTED in part** only as stated herein.

      a.  The Court adopts the factual findings of the Magistrate Judge set forth in the Report, and further adopts the reasoning and recommendations in the Report as set forth in Sections V(B) and V(C).

      b.  The Court need not address the remainder of the Report.

3.    Defendant's Motion to Suppress (Doc. 50) is **DENIED**.

4.    A status conference is set for **Thursday, June 17, 2021, at 3:30 p.m.** before the undersigned in Courtroom 10B.   Defendant is required to be present.

**DONE AND ORDERED** in Jacksonville, Florida this 15th day of June, 2021.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

lc27

Copies to:
Counsel of Record